# In the United States Court of Federal Claims

No. 12-527 C

(Filed January 3, 2017)[1]

```
* * * * * * * * * * * *   *
RQ SQUARED, LLC,          *
                          *
              Plaintiff,  *
                          *
        v.                *
                          *
THE UNITED STATES,        *
                          *
              Defendant.  *
                          *
* * * * * * * * * * * *   *
```

Implied-in-Fact Contract Claim; Second
RCFC 56(d) Request; Mere Speculation
as to the Existence of Additional
Undiscovered Relevant Facts; No
Genuine Issues of Material Fact.

*Christopher F. Regan*, Washington, DC, for plaintiff.

*David M. Kerr*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, United States Department of Justice, Washington, DC, for defendant.

_____

## OPINION AND ORDER

_____

**BUSH**, *Senior Judge.*

This matter is before the court on defendant's renewed motion for summary

_____

[1] This opinion was issued under seal on December 14, 2016. Pursuant to ¶ 3 of the ordering language, the parties were invited to identify proprietary material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

judgment, relying on Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The motion has been fully briefed, and oral argument, upon plaintiff's request, was held on November 3, 2016. Although plaintiff again asks that the court deny the government summary judgment on the claims set forth in the complaint, or, in the alternative, that the court defer ruling on summary judgment so that plaintiff may conduct additional discovery pursuant to RCFC 56(d), neither request has merit. For the reasons described below, defendant's renewed motion for summary judgment is granted.

## BACKGROUND

### I.    Procedural Posture

This a suit founded on an alleged implied-in-fact contract. RQ Squared, LLC (RQ2), a technology company, asserts that the United States Postal Service (Postal Service or USPS) entered into negotiations with RQ2 regarding a potential business relationship between the two entities. According to the complaint, the negotiations faltered and some time later proprietary information belonging to RQ2 – information that had been revealed to the Postal Service – was improperly used by the Postal Service and disclosed to other businesses such as United Parcel Service (UPS), to the profit of both the Postal Service and UPS. In plaintiff's view, the Postal Service breached its implied-in-fact contract with RQ2 by disclosing and/or misappropriating proprietary information.

RQ2 claims to have invented a "dual label system" so that a consumer could ship a product back to a retailer via either the Postal Service or a private carrier. Compl. ¶¶ 13-15, 23. Plaintiff alleges that its dual label system was later used by UPS for its Flexible Access program and, subsequently, by Federal Express (FedEx) for its SmartPost program. The government contends that no proprietary information obtained from RQ2 was used or disclosed by the Postal Service. The basic dispute has proceeded, in various iterations, in a suit brought in the United States District Court for the Western District of Missouri, and in two suits before this court.

A full recitation of background facts is given in the court's prior opinion which denied the government's motion for judgment on the pleadings and first motion for summary judgment. *See RQ Squared, LLC v. United States*, 119 Fed.

Cl. 751 (2015) (*RQ Squared I*).  The court noted at that time that plaintiff's claims narrowly escaped dismissal on plausibility grounds.  *Id.* at 761.  The court also observed that the government had made a strong case for summary judgment in its favor and that dismissal of the complaint was forestalled only by plaintiff's request for discovery under RCFC 56(d).  *Id.* at 761 & n.5.

The court deferred ruling on the government's initial summary judgment motion.  However, the court made it clear that discovery in this case under RCFC 56(d) would not be permitted for the "'far-ranging and questionable topics'" requested by plaintiff, but rather would be targeted and limited to the material issue that might prevent summary judgment.  *Id.* at 761-62 (citation omitted).  The topic of discovery was limited to

> whether UPS already possessed the concept and technology for its dual label system that became Flexible Access, before RQ2 allegedly shared its [dual label system] concept and technology with USPS.

*Id.* at 762.  In other words, RQ2 would be allowed discovery on the issue of whether UPS possessed a dual label system before RQ2 allegedly disclosed its dual label system to the Postal Service, and whether the Postal Service provided UPS with any proprietary information obtained from RQ2.

In an attempt to avoid discovery disputes, the court provided further clarification of the limited scope of discovery:

> [D]iscovery will be limited to the topics covered by [UPS marketing director] Ms. Shepherd West's declaration that are material to the Government's pending motion for summary judgment, namely (1) the personnel at UPS and the U.S. Postal Service (USPS) who dealt with one another in developing the UPS Flexible Access program, (2) the nature of any materials and information provided to UPS by USPS in developing the Flexible Access program (either before or after 2005), and (3) the technology o[n] which UPS relied in developing the Flexible Access program (including any

3

> "dual" labels that UPS had in use prior to approximately
> 2005).

Order of Mar. 30, 2015, at 2-3 (quoting Jt. Proposed Limited Discovery Schedule
of Mar. 19, 2015, at 3).  By means of a deposition of Ms. Shepherd West and
related discovery, RQ2 was given the opportunity to explore facts relevant to the
government's assertion that UPS independently developed Flexible Access and in
no way relied on proprietary information disclosed to the Postal Service by RQ2.

The court also dealt with another issue in its limited discovery order.
Defendant, at the outset of limited discovery, requested that the court require
plaintiff to better define its claim:

> Defendant . . . believes that, under the circumstances of
> this matter, fairness and judicial economy demand that
> plaintiff be required to disclose basic information about
> its claim, so that the Government and UPS can better
> ensure that the information provided in response to
> plaintiff's discovery requests addresses the claims in the
> litigation.  Specifically, the Court should require plaintiff
> to disclose in writing precisely what aspects and features
> of its alleged "dual label system" plaintiff believes that
> USPS used impermissibly in its parcel return programs
> with UPS and Federal Express, and plaintiff's basis for
> believing so.  To date, plaintiff has remained vague
> about its claim, shifting from focusing on an allegedly
> "novel" idea for dual mailing labels, Compl. ¶ 13, to
> arguing that USPS must have impermissibly used aspects
> of plaintiff's "back end" technology in developing its
> parcel return programs with other companies.
> [Christopher] Grubb Decl. ¶ 30.  As a matter of fairness,
> defendant should receive notice of the features that
> plaintiff claims were allegedly copied impermissibly.
> Moreover, requiring such a disclosure would benefit
> judicial economy and the limited discovery process by
> permitting the Government and UPS to address the
> relevant issues in their discovery responses.  Therefore,

> we request that the Court order plaintiff to disclose in
> writing, by April 20, 2015, what aspects and features of
> its alleged "dual label system" plaintiff believes that
> USPS used impermissibly in its parcel return programs
> with UPS and Federal Express, and plaintiff's basis for
> believing that USPS did so.

Jt. Proposed Schedule of Mar. 19, 2015, at 3-4.  Plaintiff objected to defendant's request and the court permitted limited discovery to proceed without the clarifying disclosure from plaintiff requested by defendant.  Order of Mar. 30, 2015, at 2.

It is important to note, however, that the court's limited discovery order set no limits on the scope of the government's renewed motion for summary judgment that would follow limited discovery; indeed, the court embraced the parties' requested pronouncement as to the impact of limited discovery on this case:

> Nothing in this [Limited Discovery] Scheduling Order
> shall operate as a waiver of any rights or arguments that
> either party may have, including the right to object to the
> discovery requests propounded by Plaintiff.  Nor shall
> anything in this Scheduling Order be construed to shift
> any burdens of proof or persuasion.

*Id.* at 4.  Further, as plaintiff conceded, "[d]efendant's next opportunity to test the sufficiency of the claims [in the complaint] will come at the summary judgment stage, after the parties complete the limited discovery that the Court has ordered." Jt. Proposed Schedule of Mar. 19, 2015, at 5.  In other words, no action by the court or the parties limited the government's arguments in its renewed motion for summary judgment to the limited discovery topics announced in *RQ Squared I* or the court's Limited Discovery Scheduling Order of Mar. 30, 2015.[2]

---

[2] Plaintiff's contentions to the contrary find no support in the court's orders and opinion text cited by plaintiff.  *See* Pl.'s Opp. at 5-6, 16 & n.9.  Further, the caselaw cited by plaintiff does not address the procedural circumstances of this case. *See Yeager's Fuel, Inc. v. Pa. Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994) (finding unfair surprise to the non-movants stemming from an argument raised for the first time in the movant's summary judgment reply brief); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 n.18 (3d Cir. 1990) (finding

(continued...)

Despite the guidance provided to the parties, discovery disputes were not entirely avoided.  Early this year, after approximately ten months of discovery, the parties disagreed as to whether all relevant, limited discovery was complete, or whether "additional limited discovery [wa]s necessary."  Pl.'s Br. of Feb. 18, 2016, at 2.  The court encouraged the parties to achieve a compromise on this issue, and also opined that any dispute over the need for additional discovery was a question best resolved once the government's renewed motion for summary judgment brought a sharper focus on the information that had been obtained through the limited discovery ordered by the court.  *See* Order of Feb. 29, 2016, at 4.  Plaintiff accepted the court's guidance and reserved its request for additional discovery for its opposition to the government's renewed motion for summary judgment.  *See* Pl.'s Status Report of Mar. 18, 2016, at 1.

Thus, there are two principal questions to be resolved by the court at this time.  First, has the government demonstrated that there are no genuine issues of material fact and that the government is entitled to summary judgment on plaintiff's claims?  Second, has plaintiff shown the need for additional discovery under RCFC 56(d)?  The court reviews the factual background of this dispute below, although familiarity with *RQ Squared I* is presumed.

## II.    Factual Background[3]

RQ2 is a technology company based in Saint Joseph, Missouri.  In 2001, one of its business ventures facilitated the return of cell phones to the seller via FedEx.  Compl. ¶ 10; Tamara Grubb Decl. ¶¶ 3-4.  Through this activity RQ2 developed a "web-based program and software" that enabled consumers to print FedEx labels for their product return packages.  Compl. ¶ 10.

---

[2](...continued)
unfair surprise to the non-movant when the district court ruled on claim elements other than those addressed in a summary judgment motion).  The court has found no authority limiting the scope of a subsequent summary judgment motion to the scope of limited discovery conducted under Rule 56(d), and plaintiff has presented none.

[3]/  The undisputed facts recounted here are taken from the complaint and other filings submitted by the parties.  Citations to the page numbers of the exhibits attached by the parties to their briefs only include the last three digits of the page numbers.

In 2003, the Postal Service launched Parcel Return Service (PRS) as an experiment; PRS allows a customer to return merchandise to a retailer by affixing a label provided by the retailer, thus permitting both the Postal Service and a private carrier to participate in the transportation of the item back to the retailer. By 2005, only one company, Newgistics, was approved as a PRS provider with the Postal Service, and the Postal Service was seeking additional PRS providers. RQ2 applied to become a PRS provider in 2005-06, proposing that RQ2 become the intermediary for the Postal Service and FedEx for consumer-to-business product returns. Ultimately, negotiations ceased between RQ2 and the Postal Service and RQ2 did not become a PRS provider.

UPS became a PRS provider in early 2009, with its Flexible Access program, and FedEx also became a PRS provider later that year with its SmartPost program. In June 2009, RQ2's attorney contacted the Postal Service and claimed that the Postal Service had disclosed and misappropriated RQ2's proprietary information for the benefit of the Postal Service and its PRS providers. This subject matter is now the third lawsuit brought by RQ2 that attempts to recover damages based on its theory that the Postal Service disclosed and misappropriated RQ2's proprietary information to PRS providers UPS and FedEx.[4]

## DISCUSSION

## I.    Standard of Review for Summary Judgment

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotations and citations omitted). The party moving for summary judgment will

---

[4]/ Here, the primary focus of this dispute is on UPS's Flexible Access PRS program, both because UPS became a PRS provider before FedEx, and, because it was the announcement of the launch of Flexible Access that triggered RQ2's claim alleging the Postal Service's disclosure and misappropriation of RQ2's proprietary technology. *See* Compl. ¶¶ 73-83; *id.* Ex. 1 Enc. 1, at 3; Tamara Grubb Decl. ¶¶ 17-19; *id.* Ex. A, at 6. To the extent that RQ2 possessed a novel concept and technology, the key question is whether UPS's Flexible Access, the first alleged instance of misappropriation, was developed independently of RQ2's technology, or not. Although FedEx's SmartPost is also alleged to be an example of misappropriated technology, its later arrival in the marketplace does not raise the same issue of novelty.

prevail "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a).  A genuine issue of material fact is one that could "affect the outcome" of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party."  *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted).

"The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial.  *Celotex*, 477 U.S. at 324.  As the United States Court of Appeals for the Federal Circuit has held:

> [T]hough summary judgment may be a lethal weapon . . . capable of overkill, the threat of summary judgment is often beneficial, forcing movant and non-movant alike to establish what facts, if any, are material and disputed. General assertions of fact issues, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden.  Thus, where a non-movant has failed to establish specific fact issues in response to a Rule 56 motion, he cannot later be heard to attack the judgment on the basis of matters that, had he but raised them earlier, might have precluded its grant.

*Chem. Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed. Cir. 1986) (*Chemical Engineering*) (citations and internal quotations omitted).

The United States Supreme Court has instructed that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48.  A nonmovant

will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citation omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland*, 16 F.3d at 1202 (citing *Celotex*, 477 U.S. at 323).

## II.    Standard of Review for Requests for Discovery Under RCFC 56(d)

Rule 56(d) governs discovery afforded to a party opposing a summary judgment motion:

> *When Facts Are Unavailable to the Nonmovant.* If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

RCFC 56(d). The nonmovant will generally be given a chance to conduct discovery that is reasonably directed to obtaining facts essential to its case. *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 852 (Fed. Cir. 1992) (citations omitted); *see Dunkin' Donuts of Am., Inc. v. Metallurgical Exoproducts Corp.*, 840 F.2d 917, 919 (Fed. Cir. 1988) (vacating a grant of summary judgment because no opportunity for the discovery of pertinent facts was afforded the nonmovant). If a continuance is granted under this rule, the court must ensure that the nonmovant has "adequate time for discovery." *Dunkin' Donuts*, 840 F.2d at 919 (citing *Celotex*, 477 U.S. at 322-23).

The opportunity provided by RCFC 56(d) to conduct discovery while resisting summary judgment is not unlimited, however. Rule 56(d) "provides for comparatively limited discovery for the purpose of showing facts sufficient to withstand a summary judgment motion." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 265 (1968). The nonmoving party will not be allowed to

conduct discovery that has no chance of leading to the denial of summary judgment for the movant. *See Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996) (stating that a court may deny a motion for additional discovery if "'there is no reason to believe that [the discovery requested] will lead to the denial of a pending motion for summary judgment'" (citing *Pac. Serv. Stations Co. v. Mobil Oil Corp.*, 689 F.2d 1055, 1066 (Temp. Emer. Ct. App. 1982))).

In other words, discovery under this rule should be limited to the legal issues upon which the resolution of a motion for summary judgment will turn. *E.g.*, *Chevron U.S.A. Inc. v. United States*, 72 Fed. Cl. 817, 819 (2006). "Rule 56(d), moreover, may not be used to defeat a motion for summary judgment when there is 'mere speculation' of evidence not yet discovered." *Morales v. Humphrey*, 309 F.R.D. 44, 48 (D.D.C. 2015) (citations omitted); *see also, e.g.*, *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1364 (Fed. Cir. 2008) (noting that a nonmovant's mere hope of developing further evidence is inadequate reason to grant discovery under Rule 56(d)). "It is not enough simply to assert, à la Wilkins Micawber, that 'something will turn up.'" *Simmons Oil*, 86 F.3d at 1144.

## III.   Analysis of the Government's Renewed Rule 56 Motion

### A.   RQ2's Claim

RQ2's complaint sets forth a claim for breach of an implied-in-fact contract between the Postal Service and RQ2. The nature of the breach is unauthorized disclosure and unauthorized use by the Postal Service of RQ2's proprietary information. The proprietary information at issue in this suit is vaguely defined, however, at best.

Based on plaintiff's allegations of fact, the alleged "trade secret" that RQ2 disclosed to the Postal Service, Compl. ¶ 7, might be the concept and design of a dual bar code mailing label; *i.e.*, one bar code for the Postal Service's scanning and tracking purposes and another for a private carrier's scanning and tracking purposes, *id.* ¶ 13. It is also possible that plaintiff is alleging that Flexible Access and SmartPost misappropriated RQ2's system design and related technology for "sorting, receiving and delivery mechanisms." *Id.* ¶ 79. It is impossible, however,

to discern from the complaint, plaintiff's supporting declarations and/or plaintiff's summary judgment briefing *exactly what proprietary information* might have been misappropriated and replicated in Flexible Access and SmartPost.

> **B.   Two Independent Grounds Exist for Granting the Government's Renewed Motion for Summary Judgment**
>
> > **1.   UPS Possessed Dual Label Technology Before RQ2 Disclosed Its Dual Label System to the Postal Service and There Is No Evidence that the Postal Service Gave Any of RQ2's Proprietary Information to UPS**

As this court framed the inquiry for the limited, targeted discovery granted plaintiff last year,

> the dispositive issue accurately highlighted by the government is whether UPS already possessed the concept and technology for its dual label system that became Flexible Access, before RQ2 allegedly shared its concept and technology with USPS.

*RQ Squared I*, 119 Fed. Cl. at 762. There is no dispute that UPS possessed and deployed dual bar code mailing label technology at least by 2004, before RQ2 allegedly disclosed dual label concepts and technology to the Postal Service. *See, e.g.*, Def.'s Exs. 6, 11. These labels permitted UPS and the Postal Service to collaboratively ship and deliver parcels destined for rural areas. Def.'s Ex. 11, at 893. Thus, in the court's view, however vehemently RQ2 may argue that its dual label system was novel, the concept and technology of dual label delivery systems pre-date any alleged disclosure of RQ2's technology to the Postal Service.[5]

---

[5]/ Plaintiff's observation that there is a "curious" similarity between the use of "LL Bean" on the sample label provided by RQ2 to the Postal Service and the use of "LL Bean" in the sample label on an undated Flexible Access poster, Pl.'s Mot. at 23 n.19, is not sufficient to create a genuine issue of material fact. As stated in defendant's reply brief, Def.'s Reply at 6 n.2, UPS used "J.C. Penney," not LL Bean, as the retailer listed on its sample Flexible Access shipping label, Def.'s Ex. 6, at 602-03, and later recruited LL Bean as a PRS retailer, Def.'s Ex. 8, at 624. The court notes, too, that RQ2's sample mailing label had the wrong address for LL

(continued...)

As for other aspects of RQ2's dual label system that are vaguely alleged to have been replicated in Flexible Access, above and beyond the dual bar code mailing label itself, the court finds no genuine issue of material fact as to the independent development of Flexible Access by UPS. Each of the aspects of Flexible Access that plaintiff attributes to RQ2's dual label system – dual entry capability (consumer drop-off can be at either the Postal Service or UPS); data collection specific to the parcels; and systems for the tracking, sorting, receiving and delivery of parcels – are explained and supported by the record evidence of the independent development of Flexible Access by UPS in 2008-09. The court briefly summarizes the substantial and uncontroverted evidence that UPS developed Flexible Access without recourse to RQ2's concepts or technology that were allegedly, according to plaintiff, provided to UPS by the Postal Service.

As defendant observes, meeting notes from 2008 show that the Postal Service proposed single entry, via Postal Service channels, for the PRS collaboration that would become Flexible Access. Def.'s Ex. 1, at 592. The only reasonable conclusion to be derived from the evidence supplied by the parties is that UPS countered with a proposal that *both* UPS and the Postal Service could accept packages from consumers for return to the retailer (thereby increasing UPS's opportunities for greater profit from the PRS collaboration). *See* Def.'s Ex. 8, at 603; Ex. 9, at 505. Dual entry capability, on this record, after according all reasonable inferences to plaintiff, was not a misappropriated RQ2 concept but the natural outgrowth of UPS's efforts to maximize its profits from PRS. *See* Shepherd West Depo., at 305-06 ("It was UPS that developed this label and . . . the Flexible Access program.").

As for data collection from package labels and other logistical technology, there is no indication that UPS obtained RQ2's "back end" technology from the Postal Service. Rather, UPS employed existing technologies from its UPS Basic delivery system (a program which also involved collaborative delivery with the Postal Service), with further development of technology specific to the PRS context. *See, e.g.*, Shepherd West Decl. ¶¶ 7, 12; Shepherd West Depo., at 206-08, 277-80, 364-72. According to Ms. Shepherd West, Flexible Access used very

---

[5](...continued)
Bean, Pl.'s Ex. 34, at 3, whereas the Flexible Access poster has the correct address, Pl.'s Ex. 35, at 1. The use of "LL Bean" on an undated poster for Flexible Access is unremarkable.

similar technology to UPS Basic, enhanced by additional data fields and technology derived from PRS specifications set forth in Postal Service guidance documents. Shepherd West Depo., at 367, 370-74. The testimony of Ms. Shepherd West is supported by internal UPS documents which chronicle the independent development of Flexible Access. *E.g.*, Def.'s Ex. 3, at 609; Ex. 4, at 484; Ex. 5, at 149; Ex. 8, at 619, 622; Ex. 9, at 506; Ex. 10, at 837; Ex. 11, at 900, 905-07; Ex. 12, at 157-58; Ex. 16, at 783-84. Other documents proffered by plaintiff also confirm this narrative. *E.g.*, Pl.'s Ex. 4, at 960; Ex. 15, at 992; Ex. 22, at 648; Ex. 23, at 491; Ex. 33, at 182-83; Ex. 36, at 104-05, 113; Ex. 37, at 776-78. Thus, there is no reasonable inference that UPS misappropriated RQ2's back end technology because the evidence of UPS's independent development of the technology supporting Flexible Access is overwhelming and uncontroverted.

It is important to note that Ms. Shepherd West's 2013 declaration, the excerpts of her 2015 deposition cited by the parties, and the documents produced at plaintiff's request by UPS and the Postal Service all show that UPS did not use RQ2's proprietary information in developing Flexible Access. Plaintiff has not identified a single piece of evidence that supports its theory of misappropriated concepts and technology. Plaintiff's claims in this suit are without evidentiary foundation, despite the discovery afforded plaintiff under RCFC 56(d).

The court must reject plaintiff's bald speculation that the Postal Service disclosed RQ2's proprietary information to UPS, because the evidence cannot be construed to support that speculation. First, the extensive negotiations between UPS and the Postal Service regarding Flexible Access are clearly shown to have taken place in 2008 and 2009, and those well-documented negotiations show that UPS adapted its own dual label system (UPS Basic) to create its PRS proposal that ultimately became Flexible Access.

Second, the Postal Service, as documented by the record of its PRS programs with Newgistics, UPS and FedEx, attempted in all instances to prioritize single entry capability (through Postal Service channels), rather than dual entry capability (drop-off at either USPS or the private carrier). *E.g.*, Def.'s Ex. 1, at 592; Ex. 5, at 139; Ex. 7, at 452; Ex. 9, at 505; Ex. 10, at 858; Ex. 15, at 568; Ex. 17, at 304; Ex. 18, at 929. It is counter-intuitive, to say the least, and totally unsupported by any record evidence, to speculate that the Postal Service would have disclosed to UPS an allegedly novel and misappropriated "Dual Entry

13

Capability" concept, Pl.'s Opp. at 1 n.1, that would decrease the Postal Service's revenue stream from Flexible Access.[6]  The Postal Service would have no motivation to advocate for a dual entry system which would allow UPS to compete with the Postal Service for the first mile (consumer drop-off) portion of PRS transportation.

Third, the dual label system proposed to the Postal Service by RQ2, as much as can be discerned from the complaint and other filings, differed significantly from Flexible Access and SmartPost.  For example, RQ2's dual label system offered not only dual entry capability but also dual delivery capability, *see* Compl. ¶ 17; Def.'s Mot. at 19 n.10, whereas Flexible Access and SmartPost rely solely on the private carrier for the "last mile" of delivery to the retailer.  The court notes, too, that RQ2 offered a three-entity partnership for its dual label system, which involved RQ2, FedEx and the Postal Service, whereas UPS offered a two-entity partnership for Flexible Access, involving just UPS and the Postal Service.[7]

Finally, Flexible Access and UPS Basic both employed Electronic Data Interchange (EDI) to share information regarding shipments between UPS and the Postal Service, whereas there is no mention of EDI in any of RQ2's descriptions of its dual label system.  Def.'s Mot. at 24; Shepherd West Depo., at 172-73, 366-67; Pl.'s Ex. 40, at 220-21.  Based on these significant differences, to the extent that RQ2 may have submitted proprietary information to the Postal Service, the record does not support plaintiff's allegation that the dual label system proposed by RQ2 was replicated in Flexible Access.  The court agrees with the government's contentions that there is no evidence that Flexible Access replicated RQ2's dual label system, and that plaintiff has failed to meet its burden to identify a genuine issue of material fact that would preclude the entry of summary judgment and dismissal of this case.  *See, e.g.*, *Dairyland*, 16 F.3d at 1202 ("A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary

---

[6]/ As defendant's counsel noted at oral argument, PRS makes more money for the Postal Service if consumers predominantly choose the Postal Service as the drop-off point for returning merchandise to retailers.  Oral Argument Recording, at 11:13 AM.

[7]/ Newgistics and FedEx, like UPS, also appear to rely on a two-entity model for the PRS program.  *See* Def.'s Exs. 15, 17.

judgment as a matter of law.").

The court reaches its conclusion despite plaintiff's efforts to cast doubt upon the record evidence and to convince the court that the "game-changing" dual label system developed by RQ2 was necessarily responsible for the success of Flexible Access and SmartPost. The court examines the principal contentions of plaintiff below.[8] It is perhaps important to note, at the outset, that plaintiff has not explained why Postal Service employees would have been motivated to misappropriate RQ2's proprietary information and deliver such information to UPS.[9] The information produced from the discovery afforded RQ2 has done nothing to dispel the implausibility of the claims set forth in the complaint. Indeed, the discovery afforded RQ2 confirms the absence of material facts that would support a judgment for RQ2 in this lawsuit.

### a.    The "Not UPS Basic in Reverse" Argument

Before RQ2's concept and technology were allegedly disclosed to the Postal Service, UPS and the Postal Service collaborated on a delivery program known as UPS Basic, a program in existence at least by 2004. UPS Basic, for rural deliveries, involved a first leg of transportation performed by UPS, with the last leg performed by the Postal Service. UPS's Flexible Access, on the other hand, involves a first leg of transportation by either the Postal Service or UPS, with the last leg performed by UPS.

Plaintiff insists that UPS's Flexible Access is not UPS Basic in reverse, and concludes, erroneously, that UPS could not have developed Flexible Access from UPS Basic without RQ2's proprietary information. Pl.'s Mot. at 18-29. Plaintiff argues that the differences between Flexible Access and UPS Basic create a genuine issue of material fact as to the origins and development of Flexible Access. *See, e.g.*, *id.* at 29 ("Flexible Access is to [UPS] Basic as an iPhone is to a rotary phone.") (emphasis removed). The court cannot agree.

---

[8]/   The court has considered each of plaintiff's arguments in this regard and finds them to be unpersuasive.

[9]/   The record contains evidence that the Postal Service informed UPS that the Postal Service could not disclose confidential information regarding competitors in the PRS program to UPS. Pl.'s Ex. 22, at 650.

The record evidence clearly shows that UPS often referenced the technology used in UPS Basic as a key part of the development of Flexible Access, and that, at least in UPS internal communications, the Flexible Access PRS initiative was sometimes thought of as a program much like "UPS Basic in reverse." *See* Def.'s Ex. 1, at 591; Ex. 9, at 505. The fact that UPS Basic and Flexible Access, as implemented, are not identical and instead exhibit significant differences does not discredit the uncontroverted record evidence that UPS independently developed Flexible Access. The differences between Flexible Access and UPS Basic, on this record, do not support a reasonable inference that the Postal Service misappropriated RQ2's proprietary information or that UPS's Flexible Access was developed using RQ2's proprietary information. Instead, the only reasonable inference is that UPS's Flexible Access program was built on a foundation provided by UPS Basic's technology, not on RQ2's technology.

### b.  The "UPS-USPS Discussions in 2006" Argument

In an attempt to link the alleged disclosure of RQ2's proprietary information to the Postal Service in 2005-06 to UPS's development of Flexible Access, plaintiff argues that "discussions" between UPS and the Postal Service in 2006 cast doubt upon the substantial and uncontroverted evidence that UPS developed Flexible Access independently in 2008-09. Indeed, plaintiff asserts that "UPS documents that RQ2 uncovered during discovery *prove* that UPS and the Postal Service began discussing the program that became Flexible Access in 2006 – exactly the timeframe that supports RQ2's claim." Pl.'s Opp. at 19 (emphasis added); *see also id.* (stating that "Ms. Shepherd West conceded [in her deposition] that she was aware that these 2006 discussions had occurred"). The court notes, at the outset, that plaintiff uses these UPS-USPS "discussions" for two purposes:  (1) to attempt to discredit the chronology of the development of Flexible Access provided by Ms. Shepherd West in her 2013 declaration; and, (2) to fuel the entirely speculative inference that the Postal Service delivered novel ideas and technology to UPS in 2006 that had recently been acquired and misappropriated from RQ2.

The court has scoured the record for evidence of UPS-USPS "discussions" in 2006 and finds none. Instead, there is mention of a 2006 UPS investigation of the PRS initiative at the Postal Service which, to all appearances, was abandoned as not fruitful because of profitability concerns. *E.g.*, Pl.'s Ex. 23, at 485-86. To

the extent that plaintiff argues that the 2006 UPS investigation of the PRS initiative at the Postal Service involved UPS-USPS discussions, that is mere unfounded speculation on plaintiff's part.  To the extent that plaintiff further argues that the Postal Service transferred misappropriated technology to UPS during discussions held in 2006, that is also mere speculation ungrounded in any evidence before the court.  Finally, to the extent that plaintiff argues that the Postal Service disclosed RQ2's proprietary information to UPS in discussions held in 2006, and that this proprietary information remained dormant for two years, until, with absolutely no paper trail, RQ2's proprietary information became fodder for the development of Flexible Access at UPS in 2008-09, this, too, is mere speculation with no evidentiary foundation.

The UPS investigation of PRS in 2006 neither discredits Ms. Shepherd West's declaration nor supports a fair inference that plaintiff's claims in this suit have substance.  Viewed in a light most favorable to plaintiff and affording all favorable inferences to plaintiff with respect to the evidence before the court, UPS actions in 2006 provide no evidence which would support judgment in plaintiff's favor.  RQ2 has not identified a genuine issue of material fact in this regard which prevents summary judgment in favor of the government.

### c.     The "Other Postal Service Actors" Argument

Plaintiff's last significant argument resisting summary judgment alleges that Mr. John Gullo or Ms. Krista Finazzo could have been the Postal Service employee who disclosed RQ2's proprietary information to UPS.  Plaintiff relies on email and meeting records that identify Mr. Gullo and Ms. Finazzo as persons who dealt with PRS proposals from both RQ2 and UPS.  Plaintiff uses this evidence, first, to attack the credibility of a Postal Service declarant, Mr. James P. Cochrane, who stated that he was the only Postal Service employee involved in PRS discussions with RQ2 as well as PRS discussions with UPS or FedEx.  *See* Cochrane Decl. ¶¶ 11-12 (stating first that "to the best of my knowledge I am the only USPS employee who worked both with RQ Squared and with either UPS or FedEx," and then describing himself as "the only individual who was involved in both sets of discussions").  Second, plaintiff also alleges that there is a genuine issue of material fact as to what Mr. Gullo and Ms. Finazzo might have done with RQ2's proprietary information.

The court notes, at the outset, that the government's renewed motion for summary judgment does not cite to or rely on Mr. Cochrane's declaration.  Thus, although one of Mr. Cochrane's statements in that declaration may be inaccurate (or accurate in one paragraph but inaccurate in the following paragraph), any infirm statement in Mr. Cochrane's declaration is not a fact that the government advances as material to its dispositive motion.  Instead, the government relies on a great number of documents, along with Ms. Shepherd West's declaration and deposition testimony, which show that Flexible Access was derived independently of any misappropriation of RQ2's proprietary information that was allegedly in the possession of the Postal Service.  Def.'s Facts ¶¶ 13-50.  Thus, the accuracy of Mr. Cochrane's declaration is of no consequence in the resolution of defendant's motion, and any inaccuracy in that declaration is insufficient to establish a genuine issue of material fact which might preclude summary judgment for defendant.

The court turns next to plaintiff's speculation as to what Mr. Gullo and Ms. Finazzo might have done with proprietary information disclosed by RQ2. Viewing the record evidence in the light most favorable to plaintiff, the court agrees with plaintiff that Mr. Gullo and Ms. Finazzo cannot be excluded as *potential* sources for a disclosure of RQ2's proprietary information to UPS.  The court must agree with the government, however, that the limited contact between Mr. Gullo and Ms. Finazzo and UPS does "not contradict the record evidence that shows that the dual label concept and capability were in use prior to both [RQ2's dual label system and UPS's Flexible Access] and th[at] [Flexible Access's technology] did not come from RQ2."  Def.'s Reply at 5.  Indeed, defendant cogently explains why the limited contact between Mr. Gullo and Ms. Finazzo and UPS during the development of Flexible Access provides absolutely no support for plaintiff's allegation that Flexible Access is founded on RQ2's proprietary information.  *Id.* at 10-11.

The record shows that neither Mr. Gullo nor Ms. Finazzo played a key role in the early development of Flexible Access.  *Id.* at 10.  Mr. Gullo, after attending two initial meetings with UPS, was not part of the email correspondence which evidences PRS negotiations between UPS and the Postal Service in 2008-09.  *Id.* Ms. Finazzo's role in the development of Flexible Access was limited to approval of Flexible Access's mailing label in 2009 – there is no evidence that she met or corresponded with anyone at UPS in either 2008 or 2009.  *Id.* at 11; Pl.'s Ex. 28. Plaintiff has established no evidentiary connection between Mr. Gullo or Ms.

Finazzo and a disclosure of RQ2's proprietary information, or a connection
between proprietary features of RQ2's dual label system and similar features of
Flexible Access.  In essence, plaintiff posits collusion between the Postal Service
and UPS where there is not a shred of evidence to support plaintiff's speculative
theory of disclosure and misappropriation of RQ2's "trade secret."  Plaintiff has,
again, failed to identify a genuine issue of material fact which would prevent the
entry of summary judgment in the government's favor.

> **2.      Plaintiff Fails to Identify a Genuine Issue of Material Fact
> Regarding the Replication of RQ2's Proprietary
> Information in Flexible Access**

As the government points out in its opening brief, plaintiff has failed to
specifically identify the proprietary information that was allegedly divulged by
RQ2 to the Postal Service:

> First, at a very basic level, RQ2 has never provided
> evidence showing that it transmitted copies of software
> or similar technology underlying RQ2's proposal to the
> Postal Service.  The record thus lacks information
> establishing what allegedly proprietary "back end"
> technology RQ2 claims to have disclosed to USPS
> beyond the information in the PRS applications attached
> to its complaint, as well as to whom at USPS the
> technology was allegedly disclosed.  The lack of this
> basic information eliminates the duty and breach
> elements of its claim.  RQ2's claim was initially
> premised on the notion that the overall concept of a "dual
> label" was novel and proprietary -- but that is clearly not
> true.  *Compare* Compl. ¶ 13 *with, e.g.*, Shepherd West
> Decl. ¶¶ 8-10.  If RQ2 is going to rely on claims that
> subsequent parcel returns programs relied on its "back
> end" technology, it needs to establish at a *prima facie*
> level that it even transmitted such technology to the
> Postal Service.

Def.'s Mot. at 23-24.  Plaintiff's only response to this argument is that RQ2, to

resist summary judgment, need not identify its proprietary technology with any specificity because of the limited scope of the discovery ordered by the court last year. Pl.'s Opp. at 15 (stating that "the single dispositive issue to be resolved at this time is whether 'UPS already had a like concept and technology before RQ2 is said to have disclosed its system to USPS'" (quoting *RQ Squared I*, 119 Fed. Cl. at 761)); *see also id.* at 5 (stating that "the overall merit of RQ2's claims is not at issue" in the government's motion for summary judgment); Oral Argument Recording, at 11:25-26 AM. According to plaintiff, the only issue ripe at this time is the novelty of RQ2's dual label system in 2005-06. Pl.'s Opp. at 15. As noted above, however, the government was not constrained in the scope of its summary judgment arguments by the scope of limited discovery ordered by this court under RCFC 56(d).[10]

Plaintiff was plainly put on notice that its claim for breach of an implied-in-fact contract not to disclose proprietary information was subject to dismissal for lack of evidence as to the specific nature of the "software or similar technology" allegedly provided to the Postal Service and later allegedly misappropriated by UPS for Flexible Access. Def.'s Mot. at 23. Plaintiff cannot argue, on this record, that plaintiff has set forth the specifics of RQ2's "proprietary logistical and tracking software," Compl. ¶ 23, that was allegedly provided to the Postal Service in 2005-06. This is a fundamental failure of plaintiff to meet its burden as the nonmovant resisting summary judgment. *See, e.g.*, *Chemical Engineering*, 795 F.2d at 1571 ("[W]here a non-movant has failed to establish specific fact issues in response to a Rule 56 motion, he cannot later be heard to attack the judgment on the basis of matters that, had he but raised them earlier, might have precluded its grant.").

Plaintiff has repeatedly asserted that there are genuine issues of material fact as to the development of Flexible Access and the alleged misappropriation of RQ2's proprietary information. The inquiry into misappropriation of proprietary information necessarily depends on a comparison of RQ2's dual label system and UPS's Flexible Access. Through discovery, extensive information as to the technology of Flexible Access has been disclosed to plaintiff. *See, e.g.*, Pl.'s Exs. 36, 38, 40. Plaintiff has not provided sufficient details, however, of the technological foundation of RQ2's dual label system to support a claim that

---

[10]/ *See supra* note 2 and accompanying text.

Flexible Access replicates *any* technology provided by RQ2 to the Postal Service.[11]  Without such information which is, by definition, within plaintiff's control, plaintiff cannot point to a single genuine issue of material fact as to the misappropriation of its "proprietary logistical and tracking software." Compl. ¶ 23. The court must agree with defendant that summary judgment is warranted on plaintiff's claims for this reason alone.

Furthermore, even if the court agreed with plaintiff that the scope of discovery ordered by the court somehow narrowed subsequent summary judgment proceedings, a proposition which the court rejects, the government would still be entitled to summary judgment.  Here, even plaintiff concedes that the issue that is ripe before the court is the novelty, in 2005-06, of RQ2's dual label system.  *See* Pl.'s Opp. at 3 (describing the issue ripe for decision on summary judgment as the question of whether "RQ2's 'concept and technology' were not novel because they were already possessed by UPS").  That formulation of the dispositive issue in this case requires an examination of RQ2's concept and technology, an examination which plaintiff frustrates by failing to identify, with any specificity, its proprietary technology.  Plaintiff cannot point to a genuine issue of material fact as to its misappropriation claim because RQ2's arguments rely on vague generalities, instead of specifics, as to the comparative novelty of its technology.  *See, e.g.*, *Chemical Engineering*, 795 F.2d at 1571 ("General assertions of fact issues, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden.").  Thus, even under the ripeness framework proposed by plaintiff, there are no genuine issues of material fact and the government is entitled to summary judgment as a matter of law.

---

[11]/ Although the complaint advances a claim for the misappropriation of RQ2's proprietary technology, the exact nature of RQ2's "trade secret" remains elusive.  Defendant observed at oral argument that RQ2's "Dual Entry Capability" idea, even if this were now proposed as the foundation of the claims set forth in the complaint, does not exhibit the characteristics of a trade secret because it is an obvious idea.  Oral Argument Recording, at 11:12 AM.  The court notes that plaintiff has not argued that RQ2's "Dual Entry Capability" concept, alone, is cognizable as a trade secret.  *See, e.g.*, Pl.'s Opp. at 7 ("RQ2 filed this lawsuit on August 21, 2012, claiming that the United States had breached its contractual obligations by misappropriating RQ2's proprietary Dual Entry System technology.").  Because plaintiff has failed to identify a cognizable "trade secret" disclosed by RQ2 to the Postal Service with any specificity, plaintiff's burden as the nonmovant on summary judgment has not been met.  *See, e.g.*, *Chemical Engineering*, 795 F.2d at 1571 (noting the nonmovant's duty to "establish specific fact issues in response to a Rule 56 motion").

The technology underlying plaintiff's claim remains undefined, although that technology is asserted to be a key part of plaintiff's claim. *Cf.* Oral Argument Recording, at 11:33 AM (plaintiff's counsel stating that the question before the court is whether RQ2 had "the *technology* that would allow the consumer to make a choice about where to enter that [parcel into the PRS program] and have those bar codes communicate that information with both carriers") (emphasis added); *id.*, at 11:48 AM (plaintiff's counsel stating that "this is not just about labels, this is about the back-end *technology* associated with that") (emphasis added); *id.* (plaintiff's counsel asserting that the basis of RQ2's claim is "the *technology* behind the label") (emphasis added). Because plaintiff has failed to identify the specific technology allegedly misappropriated by the Postal Service, there is no genuine issue of material fact in dispute and the government is entitled to summary judgment on the claims set forth in the complaint.

## IV.   Analysis of Plaintiff's Rule 56(d) Request for Additional Discovery

In the alternative, plaintiff requests additional discovery under RCFC 56(d). This is plaintiff's second request under that rule, following approximately a year of the limited, targeted discovery activities previously granted plaintiff. To the extent that plaintiff argues that it has discovered "key inaccuracies in the Government's story" of the development of Flexible Access, Pl.'s Opp. at 30, the court finds that the independent development of Flexible Access by UPS is fully and accurately documented in the record evidence before the court. To the extent that plaintiff alleges that the paucity of emails and other documents pre-dating 2009 undermines the documentary evidence of the genesis of Flexible Access in 2008-09, *id.* at 30-32, plaintiff's purely speculative hope that incriminating documents might exist is not enough to support additional discovery under RCFC 56(d). *See, e.g.*, *Serdarevic*, 532 F.3d at 1364 (noting that a nonmovant's mere hope of developing further evidence is inadequate reason to grant discovery under Rule 56(d)). At oral argument, plaintiff's counsel suggested that additional discovery would be appropriate if the court has any doubt as to whether the government had met its burden on summary judgment. Oral Argument Recording, at 11:26-27 AM. The court has no such doubt, and therefore denies plaintiff's request for additional discovery under RCFC 56(d).[12]

---

[12]/ If plaintiff had framed its request for additional discovery as a motion to compel

(continued...)

## CONCLUSION

For these reasons, it is hereby **ORDERED** that:

(1)   Defendant's Renewed Motion for Summary Judgment, filed April 26, 2016, is **GRANTED**;

(2)   The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** the complaint, with prejudice;

(3)   On or before **December 29, 2016**, counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this opinion, with any material deemed proprietary marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record of this matter; and,

(4)   Each party shall bear its own costs.

/s/Lynn J. Bush_____
LYNN J. BUSH
Senior Judge

---

[12](...continued)
discovery, the resolution of such a motion would have required extensive briefing covering the same ground as the summary judgment briefing reviewed here.  Plaintiff's request for additional discovery, in the form of a motion to compel, would necessarily have been denied as unwarranted for the same reasons that its Rule 56(d) request is denied here.